**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

In re:

Terry Lee Catlett and Susan Lee Catlett,                      Case No. 25-50359-can11

Debtors.                                                      Chapter 11

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR, IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION PAYMENTS

Now Comes Blue Bridge Financial, Inc. ("Blue Bridge"), by its counsel, Evan Lincoln Moscov and hereby moves pursuant to 11 U.S.C §362(d) for relief from the 11 USC §362(a) automatic stay with respect to the 2010 Freightliner Cascadia 125; VIN:1FUJGLDRXASAR04639 ("Freightliner")  and the 2003 Peterbilt 379; VIN: 379 1XP5D49X13D595017 ("Peterbilt") to allow Blue Bridge to exercise its rights and remedies pursuant to the security agreement and state law including, but not limited to, liquidation. In the alternative to relief from the automatic stay, Blue Bridge moves pursuant to 11 U.S.C. §361 for the entry of an order compelling the Debtor to tender adequate protection payments to it on a monthly basis. In support of the Motion, Blue Bridge states the following:

1. On or about May 30, 2025, Terry Catlett Trucking, LLC ("Terry Catlett") entered into a Equipment Finance Agreement ("the Agreement") with Blue Bridge for the Freightliner and the Peterbilt and provided Blue Bridge with security interests in the Freightliner and the Peterbilt. A copy of the Agreement is attached hereto as an exhibit to the Motion.

2. The Agreement references the Debtor, Terry Lee Catlett, as guarantor.

3. The Agreement consolidated two separate and outstanding delinquent loans for the Freightliner and the Peterbilt between Blue Bridge and Terry Catlett.

4. Blue Bridge has perfected the security interests in the Freightliner and the Peterbilt provided by Terry Catlett. A copy of the UCC Financing Statement is attached hereto as an exhibit.

5. On October 10, 2025, Debtors filed their voluntary bankruptcy petition pursuant to Chapter 11 of the United States Bankruptcy Code.

6. Terry Catlett defaulted on the Agreement pre-petition and Blue Bridge repossessed the Freightliner and the Peterbilt. A copy of the payment history is attached hetero as an exhibit to the Motion.

7. The automatic stay is preventing Blue Bridge from liquidating the collateral.

8. On February 5, 2026, Blue Bridge filed proof of claim number thirty-one ("the Claim") in the amount of $117,554.83 for the Freightliner and the Peterbilt.

9. The Freightliner and the Peterbilt are both in extremely poor condition and their combined market value is only $25,259.00.

10. Thus, there is no equity in the Freightliner and the Peterbilt for the benefit of Blue Bridge.

11. As a result of the default on the Agreement and the lack of equity in the Collateral, cause exists to terminate the automatic stay with respect to the Freightliner and the Peterbilt to allow Blue Bridge to exercise its rights and remedies pursuant to the security agreement and state law including, but not limited to, liquidation and waive the application of the fourteen day stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(4).

12. In the alternative to relief from the automatic stay, Blue Bridge seeks the entry of an order compelling the Debtors to tender adequate protection to it for the Freightliner and the Peterbilt.

13. 11 U.S.C. §363(e) provides that adequate protection be given to any entity whose interest in property is affected by the Debtor's use, sale or lease of the property.

14. Pursuant to 11 U.S.C. §361, adequate protection may be provided by Debtors via cash payments, the granting of additional liens or compensation as an administrative expense.

15. *Assuming arguendo* that the Debtors claim the Collateral is necessary for an effective reorganization of its bankruptcy estate, the retention and continued use of the Freightliner and the Peterbilt by Terry Catlett should be conditioned on the Debtors tendering adequate protection payments to Blue Bridge on a monthly basis to protect Blue Bridge's security interests in the Freightliner and Peterbilt.

/s/ Evan Lincoln Moscov
Evan Lincoln Moscov
MO Bar No. 64415
P.O. Box 8305
Waukegan, IL 60079
Telephone: (312) 969-1977
evan.moscov@moscovlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 11, 2026 a copy of the Motion for Relief from the Automatic Stay or, in the alternative, for Adequate Protection was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Ryan A. Blay
Wm Law
15095 W 116th St.
Olathe, KS 66049

Jill Parsons
DOJ-Ust
400 E. 9th St., Room 3440
Kansas City, MO 64106

3

U.S. Trustee
Room 3440
400 East 9th Street
Kansas City, MO 64106-1910

I further certify that on February 02, 2026 a copy of the Motion for Relief from the Automatic Stay or, in the alternative, for Adequate Protection was mailed by first-class U.S. Mail, postage prepaid and properly addressed, to the following:

Terry Lee Catlett
6687 NW Sharp Rd
King City, MO 64463

Susan Lee Catlett
6687 NW Sharp Rd
King City, MO 64463

Terry Catlett Trucking, LLC
6687 NW Sharp Rd
King City, MO, 64463-9218

/s/ Evan Lincoln Moscov
 Evan Lincoln Moscov

**Blue Bridge Financial Inc.**
**Payment History**

Lease Number:            ████

Lease Name: Terry Catlett Trucking, LLC
Description: 2010 Freightliner Cascadia 125 and 2003 Peterbilt 379

Payment Start Date: 06/10/2025
Last Payment Date: 08/10/2030

| Date | Description | Reference | Amount |
|------|-------------|-----------|--------|
| 06/10/2025 | Insurance Administration | ACH | -30.00 |
| | -0.00  1182 | | |
| 06/10/2025 | Insurance Premium | ACH | -240.73 |
| | -0.00  1182 | | |
| 06/10/2025 | Interim | ACH | -712.54 |
| | -0.00  1182 | | |
| 06/10/2025 | Payment | ACH | -1970.29 |
| | -0.00  1162 | | |
| 07/10/2025 | Insurance Premium | ACH | -240.73 |
| | -0.00  1162 | | |
| 07/10/2025 | Payment | ACH | -1970.29 |
| | -0.00  1142 | | |
| 07/10/2025 | Insurance Administration | ACH | -30.00 |
| | -0.00  1142 | | |
| 07/14/2025 | Lease Payment via ACH Return (Account Frozen) | | 1970.29 |
| | -0.00  1162 | | |
| 07/14/2025 | Insurance Premium  - ACH Return | | 240.73 |
| | -0.00  1162 | | |
| 07/14/2025 | Insurance Administration  - ACH Return | | 30.00 |
| | -0.00  1162 | | |
| 08/11/2025 | Payment | ACH | -3940.58 |
| | -0.00  1123 | | |
| 08/11/2025 | Insurance Premium | ACH | -240.73 |
| | -0.00  1123 | | |
| 08/11/2025 | Late Charge | ACH | -98.51 |
| | -0.00  1123 | | |
| 08/11/2025 | Insurance Administration | ACH | -30.00 |
| | -0.00  1123 | | |
| 08/11/2025 | Insurance Administration | ACH | -30.00 |
| | -0.00  1123 | | |
| 08/11/2025 | NSF Charge | ACH | -50.00 |
| | -0.00  1123 | | |
| 08/11/2025 | Insurance Premium | ACH | -240.73 |
| | -0.00  1123 | | |
| 08/13/2025 | Lease Payment via ACH Return (NSF) | | 3940.58 |
| | -0.00  1162 | | |
| 08/13/2025 | Insurance Premium  - ACH Return | | 240.73 |
| | -0.00  1162 | | |
| 08/13/2025 | Insurance Administration - ACH Return | | 30.00 |
| | -0.00  1162 | | |

```
08/13/2025 NSF Charge  - ACH Return                              50.00
-0.00   1162
08/13/2025 Late Charge  - ACH Return                             98.51
-0.00   1162
08/13/2025 Insurance Premium  - ACH Return                      240.73
-0.00   1162
08/13/2025 Insurance Administration  - ACH Return                30.00
-0.00   1162
09/10/2025 Insurance Administration              ACH            -30.00
-0.00   1162
09/10/2025 Payment                               ACH          -3940.58
-0.00   1123
09/10/2025 Insurance Premium                     ACH           -240.73
-0.00   1123
09/10/2025 Insurance Premium                     ACH           -240.73
-0.00   1123
09/10/2025 Insurance Administration              ACH            -30.00
-0.00   1123
09/10/2025 Late Charge                           ACH            -98.51
-0.00   1123
09/10/2025 NSF Charge                            ACH            -50.00
-0.00   1123
09/12/2025 Lease Payment via ACH Return (Account Frozen)      3940.58
-0.00   1162
09/12/2025 Insurance Premium  - ACH Return                      240.73
-0.00   1162
09/12/2025 Insurance Administration  - ACH Return                30.00
-0.00   1162
09/12/2025 NSF Charge  - ACH Return                              50.00
-0.00   1162
09/12/2025 Late Charge  - ACH Return                             98.51
-0.00   1162
09/12/2025 Insurance Premium  - ACH Return                      240.73
-0.00   1162
09/12/2025 Insurance Administration  - ACH Return                30.00
-0.00   1162
09/22/2025 Payment                                            -1970.29
-0.00   1142
09/24/2025 Lease Payment via ACH Return (Account Closed)      1970.29
-0.00   1162
```

Docusign Envelope ID: A270D93B-1F38-43D4-B012-A3D74A6FDE7E

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

## CREDIT APPLICATION

| FINANCE REQUEST: | ☒ Equipment | . | . |
|---|---|---|---|

### BUSINESS INFORMATION

| | |
|---|---|
| **Company name:** Terry Catlett Trucking, LLC | |
| **Business address:** 6687 NW Sharp Rd | |

| City: King City | State: MO | ZIP Code: 64463-9218 |
|---|---|---|

| Phone: ▇▇▇ | Fax: |
|---|---|
| Contact: Terry Catlett | E-mail: ▇▇▇ |
| Date business started: 07/24/2007 | Tax ID: ▇▇ 7550 |
| Business Type: LLC | Description of Business: Transportation |

### PERSONAL GUARANTOR INFORMATION

| PG1 Name: | Title: | SSN: | Ownership %: |
|---|---|---|---|
| Home Address: , , , | | | |
| Telephone: | Cell Phone: | Personal Email: | |

| PG2 Name: | Title: | SSN: | Ownership %: |
|---|---|---|---|
| Home Address: , , , | | | |
| Telephone: | Cell Phone: | Personal Email: | |

| PG3 Name: | Title: | SSN: | Ownership %: |
|---|---|---|---|
| Home Address: , , , | | | |
| Telephone: | Cell Phone: | Personal Email: | |

| PG4 Name: | Title: | SSN: | Ownership %: |
|---|---|---|---|
| Home Address: , , , | | | |
| Telephone: | Cell Phone: | Personal Email: | |

### BUSINESS BANK REFERENCES

| |
|---|
| **Institution Name:** |
| **Checking Account Number:** |

### AGREEMENT

To secure financing, the undersigned individual who is either the principal of the credit applicant or a personal guarantor of its obligation, provides written instruction to Blue Bridge Financial, Inc. (and any assignee or potential assignee thereof) authorizing review of his/her personal credit profile from a national credit bureau and authorizes all requested bank and trade information to be released via telephone, fax or email. Such authorization shall extend to updating, renewing, or extending such credit and for reviewing or collecting the resulting account. A photo copy or facsimile copy of this ▇▇▇ shall be as valid as the original.

| | |
|---|---|
| **PG1 Signature:** *[signature]* 6E0FF75C60524C6... | **Date:** 5/30/2025 |
| **PG2 Signature:** | **Date:** |
| **PG3 Signature:** | **Date:** |
| **PG4 Signature:** | **Date:** |

COPY VIEW

Docusign Envelope ID: A270D03B-1F38-43D4-B013-A3D74A6FDF75

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

| EFA CHECKLIST | | AGREEMENT NO. ▮▮▮ |
|---|---|---|

| Lender: | Blue Bridge Financial, Inc. | | |
|---|---|---|---|
| Address: | Two Fountain Square, 11921 Freedom Drive, STE 1130, Reston, VA 20190 | | |
| Phone: | 7162048467 | Fax: | 7162048472 |
| Borrower: | Terry Catlett Trucking, LLC | Tax ID : ▮▮▮7550 | |
| Address: | 6687 NW Sharp Rd, King City, MO, 64463-9218 | | |
| Contact: | Terry Catlett | Email: | ▮▮▮▮▮▮ |
| Phone: | ▮▮▮▮ | Fax: | |

Thank you for choosing Blue Bridge Financial, Inc. for your financing needs. Below please find a convenient checklist to assist you in signing your equipment finance agreement. It also includes a list of items we need you to return with your agreement to ensure timely funding.

Please return all *Original documents within 2 days* of the "Accepted on" date entered on the agreement to our office for processing:

**Blue Bridge Financial, Inc.**
**18301 Von Karman Ave., STE 920**
**Irvine, CA 92612**

When signing your documents your official title should be included on all documents EXCEPT the Personal Guaranty as follows: Corporation (President or Vice President), Partnership (General Partner), Limited Liability Company (Member), Sole Proprietor (Owner).

Thank you,
Blue Bridge Financial, Inc.

| Please sign the following documents in Blue or Black ink only: | |
|---|---|
| | **Equipment Finance Agreement** (Page 1) |
| | **Guaranty:** All Guarantors signatures required (Page 1, Additional pages provided if needed) |
| | **ACH Authorization Agreement** (Page 2) |
| | **Certificate of Insurance Request** (Page 2) |
| | **Schedule "A":** Equipment List (A separate schedule is provided per vendor) |
| | **Exhibit "B":** Certificate of Acceptance – **Required once in possession of the equipment** |
| | **Exhibit "C":** Pre-Fund Authorization (A separate exhibit is provided per vendor) |
| | |
| **The following information is required to fund your deal please return with the signed documents:** | |
| | **Legible** Copy of **NON-EXPIRED** Driver License for **ALL PG's** |
| | Advance Payment check for the invoiced amount drawn on your **business checking** account |
| | Copy of voided check from your **business checking** account for your ACH Payment |
| | Final Invoice detailing the **Serial Numbers** of the financed equipment |
| | |

**IMPORTANT INFORMATION ON PROCEDURES FOR FINANCING EQUIPMENT**

To help government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

Docusign Envelope ID: A270D93D 4E38 43D4 B013 A3D74A6EDE7E

**Blue Bridge Financial, Inc.**
Two Fountain Square, 11921 Freedom Drive, STE 1130
Reston, VA 20190

Agreement No.

# EQUIPMENT FINANCE AGREEMENT

| BORROWER INFORMATION | | | |
|---|---|---|---|
| Borrower Legal Name: **Terry Catlett Trucking, LLC** | | | |
| Address: 6687 NW Sharp Rd, King City, MO, 64463-9218 | | | County: Gentry |
| Tax I.D. No. 7550 | State Of Incorporation/Organization: Missouri | | Business Type: LLC |
| Contact: Terry Catlett | Phone: | Fax: | Email: |

## EQUIPMENT

The term "Equipment" will mean the equipment or other goods or property described in Schedule "A" to this Equipment Finance Agreement ("Agreement") and will also include all present and future attachments, additions, accessions, substitutions and replacements to or for the foregoing, as well as all proceeds and products of the foregoing, including, and without limitation, leases, chattel paper, insurance proceeds and condemnation awards.

**EQUIPMENT LOCATION:** 6687 NW Sharp Rd King City, MO 64463 **EQUIPMENT COST:** $89,588.88

## INSTALLMENT SCHEDULE

FOR VALUE RECEIVED, the undersigned Borrower (referred to throughout this Agreement as "Borrower"), jointly and severally, if more than one, unconditionally, and without setoff or defense, promises to pay to the order of Blue Bridge Financial, Inc., (referred to herein along with its successors and assigns as "Lender") the Amount Financed, as defined in section 1, by paying to the payments ("Payments") in the amount and for the number of consecutive months set forth below along with the fees and all other amounts required under the terms of this Agreement. Payments will be made at the address provided above or at such other address specified by Lender.

| Payable upon execution of this Agreement: | | | Monthly Payment Dates: ☐ 1st ☒ 10th of each month | | |
|---|---|---|---|---|---|
| Term in Months | Number of Monthly Payments | Monthly Payments | Advance Payments | Total Fees | Total Initial Payment (Fees + Advance Payment) |
| 60 months | 60 | $1,970.29 | $0.00 | $0.00 | $0.00 |

This Agreement is subject to the terms and conditions set forth on Pages 2 through 3 hereof, and Borrower acknowledges that it has read this Agreement, and had a reasonable opportunity to consult with a lawyer about the Agreement. This is a commercial transaction and neither the proceeds of this Agreement nor the Equipment will be used for personal, family or household purposes. This Agreement may be executed, communicated and retained electronically. A facsimile, scanned (pdf or otherwise), electronic version, or printed evidence of the electronic version will be admissible in court as evidence of the Borrower's execution of this Agreement and the contents thereof. For purposes of perfection of a security interest in this Agreement under the Uniform Commercial Code ("UCC") or transfer of the rights of Lender under this Agreement, to the extent that the Lender maintains the Agreement as electronic chattel paper, the single authoritative copy of the record (as such term is defined in the UCC) maintained in compliance with UCC §9-105 will constitute chattel paper, otherwise the Agreement containing Lender's original signature and marked "Original" by Lender will be the sole record constituting chattel paper. Lender is authorized to share credit information and other information obtained regarding the Borrower and guarantors with its affiliates, third parties interested in purchasing the Agreement and as otherwise permitted under applicable law. The undersigned warrants on behalf of the Borrower that he/she is an officer, member or general partner of the Borrower and is duly authorized to sign and bind the Borrower to the terms of this Agreement and other documents related to the Agreement. **PRIOR TO EXECUTION HEREOF BORROWER MAY REQUEST A COPY OF THIS AGREEMENT IN AT LEAST 10 POINT FONT.**

| BORROWER SIGNATURE | LENDER ACCEPTANCE |
|---|---|
| _Trucking, LLC_ DocuSigned by: [signature] 6E0FF75C60524C6... | _cial, Inc._ DocuSigned by: Rob Snow BEAF5775D37D47A... |
| TITLE: OWNER   DATED: 5/30/2025 | TITLE: President   DATED: 5/30/2025 |

## GUARANTY

In consideration of Lender entering into the above Agreement with Borrower, and intending to be legally bound, each undersigned Guarantor unconditionally guaranties the full and prompt performance and discharge of all present and future obligations under the Agreement ("Obligations"), including all amendments, modifications, renewals or extensions thereto. Guarantor agrees that Lender, without consent and agreement from any Guarantor, may modify the Agreement or make other arrangements with Borrower and Guarantor will still be responsible for the Obligations. Guarantor agrees that Lender need not notify it of any default under the Agreement by Borrower and may proceed directly against Guarantor without first proceeding against Borrower or the Equipment, in which event, Guarantor will pay all amounts due under the terms of the Agreement, including Lender's reasonable attorney's fees. The obligations of any/all Guarantors are joint and several and are independent of the obligations of Borrower or any other Guarantor; and a separate action or actions may be brought against any Guarantor, whether action is brought against Borrower or any other Guarantor or whether Borrower or any other Guarantor be joined in any action or actions (the liability of each Guarantor hereunder being primary). Each Guarantor hereby waives the benefit of any surety defenses and defenses based on impairment of the Equipment or other collateral. This guaranty will be construed to be as a continuing, absolute and unconditional guaranty of payment irrespective of the enforceability of any obligations of Borrower to Lender. All provisions of this guaranty are material. No provision of this guaranty may be waived, changed or terminated except by the written consent of the Lender. GUARANTOR UNDERSTANDS AND AGREES THAT THE TERMS OF THIS GUARANTY ARE GOVERNED BY THE LAWS OF THE STATE OF VIRGINIA, EXCLUDING ITS CHOICE OF LAWS PRINCIPLES, AND HEREBY CONSENT TO PERSONAL JURISDICTION AND REVIEW IN THE COURTS SET FORTH IN

X _ DocuSigned by: [signature] 6E0FF75C60524C6...

X _ _____

## AUTHORIZATION TO VERIFY TERMS OF EFA

**I understand that prior to the above referenced EFA becoming effective, Lender may require an authorized representative of Terry Catlett Trucking, LLC,** to verbally verify certain terms and conditions of the Agreement including but not limited to the verbal authorization to pay all vendors and coordination of an Equipment and location site inspection by a designated third party of Lender. I Understand that once the above referenced EFA becomes effective, with your consent, Blue Bridge Financial, Inc. would like to send text (SMS) messages to the mobile number you have provided in our records. By providing your informed consent where indicated, you acknowledge that you have understood the information and agree to participate in our text (SMS) messaging service.

Borr_ Terry Catlett Trucking LLC_

X DocuSigned by: [signature] 6E0FF75C60524C6...   Title: OWNER   Date: 5/30/2025

COPY VIEW

The Authoritative Copy of this record is held at NA3.docusign.net

**ACH AUTHORIZATION AGREEMENT**

Borrower acknowledges that a valid bank account to electronically deduct funds (ACH) from is required by Lender as a condition to financing the transactions contemplated in the Agreement. By signing below, Borrower authorizes the Lender, to electronically deduct from Borrower's bank account referenced below the Monthly Payments plus all other Obligations due or to become due under the Agreement. Borrower agrees that if for any reason it changes bank accounts or if any other change occurs affecting ACH, it will provide the Lender an amendment to this authorization authorizing ACH from a valid bank account at least 10 days prior to the next Payment Date.

Bank Name: [REDACTED]   Phone: [REDACTED]   ☒ Checking Account   ☐ Savings Account

Routing Number: [REDACTED]

Account Number: [REDACTED]

*A copy of a voided check from the above account is required* **X** _____ DocuSigned by: [signature] 6E0FF75C60524C6...

---

**CERTIFICATE OF INSURANCE REQUEST**                                    **AGREEMENT NO.** [REDACTED]

**Property Insurance must cover the full replacement value of the financed Equipment. All policies of insurance shall provide for a minimum of 30 days prior written notice of cancellation to Lender.** Valid and Continuous Insurance in Accordance with Equipment Finance Agreement (EFA) Terms and Conditions, including providing Lender with written verification of said insurance is required to avoid EFA Default and Repossession of Equipment and Non-Compliance Fees. Please provide a certificate/evidence of insurance for the above named **"Lender"** and **ITS SUCCESSORS AND/OR ASSIGNS**. The certificate can be returned with the signed EFA to **documents@bluebridgefinancial.com.** If you have any questions, please contact our office at 7162048467. The certificate is required to reflect the following:

**Equipment Cost:** $89,588.88   **Equipment Description:** As per the attached Schedule "A"   **Maximum Deductible:** $1,500

**Business Address:** 6687 NW Sharp Rd

**Additional Insured / Lender Loss Payee:** Blue Bridge Financial, Inc. ISAOA Two Fountain Square, 11921 Freedom Drive, STE 1130, Reston, VA 20190

| Required minimum vehicle limits are as follows: | Power Unit | Trailer |
|---|---|---|
| Bodily injury liability per individual | $500,000 | $300,000 |
| Bodily injury liability per accident | $500,000 | $300,000 |
| Property Damage liability | $250,000 | $250,000 |
| Combined Single limits (class 8/ other) | $750,000/$500,000 | $300,000 |
| Fire, Theft and Comprehensive | Full Replacement Value | Full Replacement Value |

| Please complete the below information so that Blue Bridge Financial, Inc. can request an Insurance Certificate for the equipment on attached Schedule A. | | |
|---|---|---|
| Insurance Agency: | Agent Name: | Phone: |
| Policy No: | Email: | Fax: |

X _____ DocuSigned by: [signature] 6E0FF75C60524C6...

---

**TERMS AND CONDITIONS**

**1. Payments, Amount Financed.** Payments are due on the above "Payment Dates". Advance Payment will be applied to the first month's Payment with any remaining applied to the last month's Payment. **The first Payment may additionally include an interim payment calculated on a per diem basis from the date of Lender's first funding under this Agreement to the first Payment Date.** If any Payment is not paid within five (5) days of when the same comes due, Borrower will pay a late charge of 5% of the overdue installment or Twenty Five Dollars ($25.00), whichever is greater; provided such amount does not exceed the maximum amount permitted under applicable law. Unless otherwise agreed by Lender all payments will be made by ACH and Borrower will execute such agreement as required by Lender to complete such Payments, provided however, the failure of the payments to be made by ACH does not relieve the Borrower of liability therefore. If any ACH transfer or Borrower check is returned unpaid as a result of insufficient funds, stop payment, closed account or otherwise, in addition to any bank charges incurred by Lender Borrower will pay a processing charge of $50.00 for each occurrence. Payments consist of principal and interest. The interest can be calculated from the Amount Financed, Payments and term hereof using the constant effective yield methodology under U.S. generally accepted accounting principles. The Amount Financed includes the Equipment Cost plus fees, commissions and expenses related to purchase of the Equipment that Lender agrees to finance hereunder and Borrower hereby authorizes the Lender include such fees, commission, and expenses in the Amount Financed. The total Amount Financed is available from Lender on request. Borrower understands that the Payments are due as scheduled hereunder notwithstanding the fact that the vendor or other payee may only been partially paid for the Equipment at the commencement of this Agreement.

**2. Term; Ownership, Security Interest, No Pre-payment or Cancellation.** The term of this Agreement commences on the date accepted by Lender and continues until Borrower performs all of its Obligations hereunder unless earlier terminated in accordance with the terms hereof. Borrower acknowledges that Lender's actions, including discussions, negotiations and delivery of this Agreement form for execution by Borrower do not constitute a commitment to lend. Lender's acceptance hereof is in its sole discretion and may be conditioned upon, among other things, receipt of acceptable proof of insurance coverage, confirmation by Borrower of its acceptance of the Equipment, and execution of all documents prepared in conjunction herewith including, if applicable, a landlord/mortgagee waiver. FLORIDA BORROWERS ONLY: This Agreement shall not be effective unless Borrower signs a Certificate of Acceptance to evidence satisfactory delivery of the Equipment. Borrower understands and agrees that Lender is a secured party and not the owner of the Equipment. As security for the indebtedness evidenced by this Agreement and all of Borrower's other indebtedness, liabilities and obligations to Lender, of any nature whatsoever, whether direct, indirect, contingent, primary, secondary, alone, joint with any other person, due, to become due, advanced in the future, now existing, hereafter created, principal, interest, expense payments, enforcement and liquidation costs, and/or attorneys' fees and expenses (collectively, the "Obligations"), Borrower hereby grants to Lender a lien and security interest, which the parties intend to be a first priority security interest, in the Equipment. The security interest Borrower grants to Lender hereunder will secure Borrower's Obligations to Lender under other agreements between Borrower and Lender (collectively, "Other Agreements") so long as but only to the extent that Lender (or if this Agreement is assigned to another party, then such assignee) is the lessor, lender, secured party or other similar party under such Other Agreements. **If Borrower cancels this Agreement any time prior to execution by Lender, Borrower thereby forfeits and Lender may keep all Advanced Payment made by Borrower. Borrower agrees that this Agreement is NOT PREPAYABLE without Lender's consent and that this Agreement and Borrower's Obligations hereunder are NONCANCELLABLE AND UNCONDITIONAL and not subject to setoff for any reason including malfunction of any of the Equipment.**

**3. Representations and Warranties.** Borrower hereby represents and warrants to Lender as follows: (a) this Agreement constitutes Borrower's valid and legally binding obligation and is fully enforceable in accordance with its terms; (b) the execution, delivery and performance of this Agreement and the borrowing hereunder does not violate any contract, indenture, agreement or instrument to which Borrower is a party; (c) Borrower is the owner of the Equipment has good and marketable title to the Equipment, free and clear of all liens, security interests or other encumbrances and the Equipment is in condition and good working order; (d) Borrower nor any other person who owns a controlling interest thereto is listed on the Specially Designated Nationals and Blocked Persons Lists maintained by the Office of Foreign Assets Control or other similar lists maintained by the federal government pursuant to any federal law or regulation regarding a person designated under Executive Order No. 13224; (e) if Borrower is a corporation, limited liability company or other legal entity: (i) the type and state of Borrower's incorporation or organization, as the case may be, is set forth on the first page hereof; (ii) Borrower is duly organized and existing under the laws of the State in which it is organized, has the corporate power to own Borrower's property and carry on Borrower's business as now being conducted, and is duly qualified to do business and are in good standing in each jurisdiction in which the character of the properties owned by Borrower therein or in which the transaction of Borrower's business makes such qualification necessary; and (iii) Borrower has the corporate power and authority to enter into and perform this Agreement and have been duly authorized to do so by all necessary corporate action.

**4. Certain Covenants.** Until payment in full of all Obligations Borrower will: (a) permit Lender or its agent to inspect and examine the Equipment or any of Borrower's records pertaining to the Equipment at any reasonable time and from time to time without notice; (b) not permit to exist any lien or security interest upon the Equipment of any nature whatsoever other than the lien created by this Agreement; (c) at Borrower's expense, defend title to the Equipment; (d) deliver to Lender any documents, including financing statements, Lender may require in order to perfect and maintain perfected Lender's first lien on the Equipment, and pay all costs relating thereto, including, without limitation, reasonable attorneys' fees and expenses, filing fees and recordation taxes; (e) comply with all applicable laws, rules, regulations and decrees (i) applicable to possession and use of the Equipment; or (ii) violation of which may have a material adverse effect on Borrower's business, operations or financial condition; and obtain any permits or licenses required by any such law, rule, regulation or decree; (f) make all filings and pay when due all taxes, fines, penalties and assessments of any governmental authority upon Borrower or upon Borrower's income, profits or property and the Equipment; (g) not permit the use of the Equipment illegally or in a manner inconsistent with a policy of insurance applicable to the Equipment; (h) promptly notify Lender of the occurrence of any default or any event, development or circumstance which might materially adversely affect Borrower's business, operations or financial condition; (i) if Borrower purports to be a corporation, limited liability company or other legal entity, maintain Borrower's corporate existence in good standing; and (j) not sell, lease, transfer or otherwise dispose of any of the Equipment without Lender's prior written consent.

COPY VIEW

THIS IS A COPY

**5. Covenants Regarding Equipment.** (a) Borrower agrees to maintain the Equipment in good condition and to make, at Borrower's expense, all repairs, renewals and replacements necessary to maintain the Equipment in good condition and will not permit anything to be done that may impair the value of the Equipment or the security intended to be afforded by this Agreement. (b) Borrower will not move the Equipment from the location specified in Schedule A unless the Equipment is a vehicle or other mobile Equipment (vehicles and mobile Equipment are jointly referred to as "Mobile Equipment") in which case the Mobile Equipment will regularly be returned to said location and Borrower will maintain records showing the location of each piece of Mobile Equipment. Borrower will report the location of the Mobile Equipment to Lender upon request by Lender. Borrower will not permit the Mobile Equipment to be located or used for any period of time outside of the continental United States without Lender's express written approval. Borrower will only operate any Mobile Equipment out of the state of its primary location if the Borrower has the required permits and made the required registrations to conduct interstate operation of the Mobile Equipment. (c) Borrower will not allow the Equipment to become affixed to real estate to the extent that it becomes a fixture under applicable law, it being the intention of the parties that the Equipment remain personal property. (d) Borrower agree to maintain, at Borrower's expense, property insurance for the full replacement value of the Equipment covering all risks including fire, flood, accident and theft, and comprehensive general liability insurance in an amount acceptable to Lender, covering any personal injury, death or third-party property damage arising out of Borrower's use or possession of the Equipment. Borrower will provide Lender with evidence of such insurance and name Lender as lender loss payee and additional insured within ten days of Lender's request to us. All insurance policies must provide a minimum of 30 days prior written notice of cancellation to Lender. **If Borrower fails to maintain such insurance, or fails to provide Lender with evidence of such insurance, Borrower will pay a non-compliance fee equal to 10% of the Payment.** Additionally, Lender may, but is not obligated to, obtain insurance in such forms and amounts as Lender deems reasonable to protect its interests. Borrower agrees that for such coverage Borrower will pay Lender a monthly insurance charge that will include all related premiums, interest, fees, charges, and a profit to Lender for providing such coverage. Borrower's Obligations to preserve and insure the Equipment will not be relieved or lessened if the Equipment is for any reason  not in Borrower's possession or control. Borrower authorizes Lender as Borrower's attorney-in-fact to make claims related to this Agreement or the Equipment under the policies of insurance maintained in accordance with the terms hereof and endorse checks, drafts or other instruments issued in payment of by the insurer. (e) Borrower will not use the Equipment to haul, store, or otherwise be exposed to environmentally hazardous materials without our prior written consent. Such consent is in Lender's sole discretion and Lender may require additional insurance coverage and licensing as a condition to granting such consent. (f) If Lender determines in its sole reasonable discretion that Borrower is not complying with its Obligations (including but not limited to the Obligations to maintain and preserve the Equipment), Borrower agrees that Lender may, at its option, take such steps as Lender deems necessary to maintain and preserve insure the Equipment or otherwise satisfy the Borrower's Obligation. All expenses so incurred by Lender, together with interest thereon from the date incurred at the uncompounded rate of eighteen percent (18%) per annum (or if lower, the maximum interest rate permitted under applicable law), will be paid by Borrower on demand by Lender and, if not paid, will be added to the principal sum hereunder.

**6. Selection of Equipment; Indemnity.** Borrower represents that it has selected the Equipment and that Lender has not made and makes no representations or warranties of any kind, directly or indirectly, express or implied, as to any matter, including, without limitation, title to or the suitability of the Equipment, its durability, its fitness for any particular purpose, its merchantability, its condition, its capacity, its operation, its performance, its design, its materials, its workmanship and/or its quality. Borrower acknowledges that the vendor is not and has not been the Lender's agent for any purpose in connection with this Agreement hereto and is not and has not been authorized to make any representations, statements or otherwise act on behalf of Lender. Borrower will indemnify and hold harmless Lender from any claims, actions, suits, proceedings, costs, expenditures, liabilities, losses, damages, injuries or expenses of any kind (including but not limited to third party claims) caused directly or indirectly by any of the Equipment, its selection, installation, removal by Lender after default by Borrower, possession, use, condition or maintenance, or any defect therein, the failure of operation thereof, or any repair, service or adjustment thereto, or by any delay or failure, or by any interruption of service or loss of use thereof, or for any loss of business or damage whatsoever and howsoever caused, and infringement of any United States patent, trademark or copyright including any loss of anticipatory profits or any other indirect, special or consequential damages. It is the intention of the Lender and Borrower that Lender have no liability whatsoever to Borrower or any third party arising from or relating any way to the Equipment. Borrower's indemnity Obligations set forth in this Agreement will continue after all other Obligations have been satisfied.

**7.  Risk of Loss.** Borrower will bear the entire risk of loss, theft or destruction or damage of the Equipment or any portions thereof from any cause whatsoever. No loss or damage to the Equipment or any part thereof will impair any of Borrower's Obligations under this Agreement, all of which will continue in full force and effect. In the event of any risk of loss, damage, theft or requisition of any material portion of Equipment, Borrower will within ten (10) days of such occurrence: (a) give written notification to Lender of said occurrence and the facts pertaining thereto; and (b) at Lender's option, either, replace said Equipment with personal property satisfactory to Lender or pay to Lender an amount equal to the product of: (i) the sum set forth in section 9(a)(calculated as of the date of payment), times (ii) the ratio of the value of the applicable Equipment to the value all Equipment, in each case as Lender determines. Such payment will not advance the monthly Payment due date hereunder. In making any such value determination, Lender may, but will not be obligated to, consider the initial cost of such Equipment as well as the depreciation thereof.

**8. Defaults.** Borrower will be in default hereunder upon the occurrence of any of the following events (an "Event of Default"): (a) the non-payment when due of any installment under this Agreement or any amount payable with respect to any other Obligations; (b) the failure to perform any agreement or covenant of Borrower contained herein including a lapse in or failure to maintain insurance required hereunder; (c) any representation or warranty made herein or in any report, certificate, financial statement or other instrument or document furnished to Lender by or on behalf of Borrower is false or misleading in any material respect; (d) the existence of an event of default under any material agreement to which Borrower or any guarantor hereto ("Guarantor") are a party or by which Borrower's property is bound, and such default is not cured within any applicable grace period;
(e) Borrower or any Guarantor are adjudicated insolvent, or make a general assignment for the benefit of creditors, or any proceeding by or against Borrower is instituted under any provision of law relating to or providing for bankruptcy, insolvency, relief of debtors or the like, or the appointment of any trustee or receiver for Borrower or any of Borrower's assets; (f) if Borrower or Guarantor changes its name, are party to any dissolution, merger, consolidation, reorganization or sell, lease or dispose of all or substantially all of Borrower's assets or experience any change in the control or majority ownership of Borrower's or Guarantor's business without Lender's prior written consent; (g) the death of any Borrower or Guarantor who is a natural person; (h) the occurrence of an Event of Default under any of the Obligations or under any guaranty, endorsement, accommodation, surety, indemnification or other similar agreement relating to the Obligations; (i) any execution or attachment is levied against the Equipment, or any part thereof, (j) any judgment is issued against Borrower or any of Borrower's property: (k) a material adverse change in Borrower's financial condition or operations; or (l) any Guarantor attempts to repudiate, revoke, rescind, withdraw or cancel a Guaranty. Borrower acknowledges that an Event of Default under this Agreement or any agreement with Lender evidencing an Obligation will constitute and Event of Default under all suchagreements.

**9. Remedies Upon Default.** Upon the occurrence of an Event of Default: (a) at Lender's option, Borrower will pay to Lender, as liquidated damages for the breach of this Agreement, all due and past due Payments as of the date of such demand plus all Payments scheduled after the date thereof without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived; (b) all outstanding principal, interest, fees, costs, expenses and any other Obligations due hereunder will immediately become due and payable at the option and upon the demand of the Lender (except for a default under 8(e) hereof in which case the all such amounts are immediately due and payable without any action by Lender); (c) Lender may take possession of or disable any of the Equipment wherever found, and, for this purpose, enter upon Borrower's premises and remove or disable the Equipment, and in so doing remove walls or widen openings as reasonably necessary to remove or disable the Equipment all without liability to Borrower; (d) all of Borrower's Obligations due and which will become due under this Agreement (including without limitation, all Obligations due before or after judgment), will bear interest at the uncompounded rate of eighteen percent (18%) per annum (or if lower, the maximum interest rate permitted under applicable law); (e) Lender may apply any property of Borrower held by Lender as a reduction of the Obligations (including set-off of any deposits of Borrower); (f) Lender may require that Borrower assemble the Equipment and make the Equipment available to Lender at a place designated by Lender at Borrower's sole expense; and (g) Lender may exercise any and all rights and remedies available under the Uniform Commercial Code or at law, equity or otherwise, including the right to dispose of the Equipment at public or private sale, and Borrower agrees that Lender or its nominee may be the purchaser at any such sale and that the proceeds of any such sale may be applied to or on account of such of the Obligations and in such order as Lender may elect (any notice of sale or other disposition of the Equipment required by applicable law will be deemed reasonable if mailed at least five (5) days before such sale or other disposition to the address last shown on Lender's records). Borrower promises to pay all reasonable costs and expenses, including, without limitation, reasonable attorneys' fees, collection costs plus additional expenses, incurred by Lender in the enforcement of this Agreement, the creation, perfection, maintenance, preservation, defense or protection of its security interest in the Equipment, the management, collection, and other preparation of the Equipment for sale or other disposition, the sale or other disposition of the Equipment, in collection efforts (including, but not limited to, overnight delivery charges, certified mail costs, long distance telephone charges and site inspections) and any other exercise by Lender of its rights and remedies available at law, equity or otherwise. The rights and remedies set forth in this section 9 are cumulative are not intended to be exhaustive and the exercise of any right or remedy will not preclude the simultaneous or later exercise by Lender of any or all such other rights and remedies available at law, equity or otherwise. In order to exercise any right or remedy, it will not be necessary to give any notice, other than such notice as is expressly required by this Agreement.

**10. Jurisdiction; Waiver of Trial by Jury.** THIS AGREEMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF VIRGINIA, EXCLUDING ITS CHOICE OF LAWS PRINCIPLES. BORROWER AGREES THAT ANY ACTION OR PROCEEDING TO WHICH BORROWER AND LENDER ARE PARTIES ARISING DIRECTLY OR INDIRECTLY FROM THIS AGREEMENT, WILL BE LITIGATED, AT LENDER'S OPTION, IN ANY STATE COURT LOCATED WITHIN FAIRFAX COUNTY, VIRGINIA OR THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA. BORROWER AND LENDER WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUIT OR PROCEEDING ARISING OUT OF, RELATING TO, OR BROUGHT IN CONNECTION WITH THIS AGREEMENT.

**11. Assignment.** Borrower will not lease, lend, sell, assign, transfer (by operation of law or otherwise) or grant a security interest in all or any part of its interest if the Equipment or this Agreement without the prior express written consent of Lender. Lender may sell, assign, transfer or grant a security interest in all or part of its rights, obligations, title or interest in the Equipment or this Agreement, or any amount payable under this Agreement, without notice to Borrower. Borrower will not assert a claim, defense or setoff it may have against the Lender against the assignee of the Lender.

**12. Set Off.** In order to pay Obligations hereunder, Lender shall have the right of set off against any of Borrower's property held in a deposit or other account with the Lender or under control of the Lender or any of its affiliates, including amounts held as security deposits for this or any other Agreements, leases or contracts.

**13. Power of Attorney; Miscellaneous.** (a) Borrower authorizes Lender and its agents to file UCC-1 financing statements or other instruments or documents covering the Equipment any other documents necessary or desirable to confirm, establish, reestablish, continue, perfect, protect or insure Lender's interest in the Equipment. If any of the Equipment is subject to a certificate of title Borrower hereby constitute and appoint Lender, or any officer, employee or designee of Lender, as its true and lawful attorney to sign in Borrower's name, place and stead, any Certificates of Ownership or applications issued by the Division of Motor Vehicles in the State covering the Equipment described above in whatever manner necessary to transfer any registration of said Equipment as Lender may deems fit and proper hereby ratifying and confirming whatever action Lender will or may take by virtue hereof. (b) This Agreement contains the entire understanding of the parties and may not be modified or waived except by an agreement in writing, signed by the parties hereto. (c) No delay or failure on Lender's part to insist upon strict performance of any term or condition of this Agreement or to exercise any right or remedy will operate as a waiver of any such term or condition or of any breach thereof or preclude Lender from exercising any such right or remedy at any later time. (d) Any notice will be deemed given when delivered by hand or courier, when mailed to Borrower by certified mail, postage prepaid, return receipt requested, addressed to Borrower at the mailing address as set forth herein (or such other address as Borrower may specify to Lender in writing) or on receipt when delivered to Borrower by electronic mail to an address provided by or utilized by Borrower for communication related to this Agreement. (e) All covenants, agreements, representations and warranties made herein will continue in full force and effect until the repayment in full of all Obligations, and whenever in this Agreement Borrower or Lender are referred to, such references will be deemed no include the successors and assigns of such party. (f) The invalidity, illegality or enforceability of any provision of this Agreement will not affect the validity, legality or unenforceability of any other provision of this Agreement. (g) The headings in this Agreement are for convenience of reference only and will not limit or otherwise affect the terms and conditions thereof. (h) Borrower acknowledges that time is of the essence with respect to Borrower's obligations under this Agreement (i) Lender is authorized to correct errors in completion of this Agreement and fill in blanks, such as serial numbers for Equipment, payment amounts and dates. (j) It is the intent of the parties to strictly comply with all applicable usury laws. In the event that the amount of interest paid by Borrower hereunder exceeds the maximum amount allowed under any applicable law, the interest will be reduced to such maximum amount and any amount paid on account of such excess interest will be applied to reduction of the principal amount and after payment of all principal any excess will be paid to the Borrower. (k) The Borrower authorizes Lender, its service providers, and any credit bureau or other investigative agency engaged by Lender to investigate, obtain and share information from time to time from any source about Borrower's credit standing and responsibility, including, but not limited to, obtaining credit reports and other financial information to evaluate and review Borrower's account. Borrower authorizes Lender to share the Borrower's credit and other information with its affiliates as permitted by law including for marketing purposes.

Docusign Envelope ID: A270D03B-1F38-43D4-B012-A3D74A6EDE7E

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

| SCHEDULE "A" | | | AGREEMENT NO. |
|---|---|---|---|
| **Vendor:** | Blue Bridge Financial, Inc. | | |
| **Address:** | 11921 Freedom Drive | | |
| | Reston, VA  20190 | | |
| **Contact:** | | | |
| **Phone:** | 8667771011 | **Fax:** | 7162048472 |

| **Permanent Physical Location of Equipment** | |
|---|---|
| **Address:** | **6687 NW Sharp Rd King City, MO   64463** |

| QTY | DESCRIPTION | SERIAL NO. |
|---|---|---|
| 1 | 2010 Freightliner Cascadia 125 | 1FUJGLDRXASAR0463 |
| 1 | 2003 Peterbilt 379 | 1XP5D49X13D595017 |



| Accepted on: 5/30/2025 | | Accepted on: 5/30/2025 | |
|---|---|---|---|
| **Name of Borrower:** Terry Catlett Trucking, LLC | | **Name of Secured Party:** Blue Bridge Financial, Inc. | |
| By: _[signature]_ 6E0FF75C60524C6... | OWNER _(Title)_ | By: _Rob Snow_ BEAF5775D37D47A... | President _Title_ |

COPY VIEW

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

## EXHIBIT "B"

| CERTIFICATE OF ACCEPTANCE | AGREEMENT NO. ▮ |
|---|---|

For Equipment Finance Agreement Dated _____

Borrower hereby certifies that as of the date referenced below the Equipment described in Schedule "A" (i) has been delivered to and accepted by Borrower after complete inspection and testing, is correctly described in Schedule "A" (with the exception of serial numbers which if omitted now may be supplied by Borrower in the future by telephone or final equipment invoice and inserted in the appropriate area on Schedule "A", (ii) is in good working order and satisfactory to Borrower in all respects. Borrower reaffirms that Borrower's obligation to pay in full the Indebtedness and to make all Payments due and to become due and perform all other obligations under this Agreement is absolute and that any recourse Borrower might have in case of any nonperformance, unsuitability or other failure of the Equipment shall be against the manufacturer or Vendor and in no case against the Secured Party.

The terms and conditions of the Agreement are incorporated herein and made a part hereof. Capitalized terms not defined herein shall have the meaning given to them in the Agreement.

Date: _____5/30/2025_____

Borrower:  Terry Catlett Trucking, LLC

By: _____[DocuSigned by signature]_____    _____ OWNER
6E0FF75C60524C6...                                                *Title*

*(If corporation, president or vice president should sign and give official title.)*
*(If partnership, general partner, if limited liability company, member.)*

COPY VIEW
COPY VIEW

Docusign Envelope ID: A279B93B4F38-43D4-B013-A8D74A6EBE7E
THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

| PRE-FUND AUTHORIZATION | | AGREEMENT NO. |
|---|---|---|
| **Lender:** | Blue Bridge Financial, Inc. | |
| **Address:** | Two Fountain Square, 11921 Freedom Drive, STE 1130, Reston, VA  20190 | |
| **Phone:** | 7162048467 | **Fax:** | 7162048472 |

| **Borrower:** | Terry Catlett Trucking, LLC | | |
|---|---|---|---|
| **Address:** | 6687 NW Sharp Rd | **Tax ID:** | 7550 |
| | King City, MO 64463-9218 | | |
| **Contact:** | | **Email:** | |
| **Phone:** | | **Fax:** | |

This Pre-Fund Authorization ("Authorization") is executed pursuant to the Equipment Finance Agreement ("Agreement") bearing the number given above between the Lender and Borrower. All capitalized terms not defined herein have the meaning set forth the Agreement. The terms and conditions of the Agreement are incorporated herein and made a part hereof.  "Titled Equipment" refers to Equipment subject to a certificate of title or the ownership of which is required to be documented by a certificate of title under applicable law.

Borrower acknowledges that **Blue Bridge Financial, Inc.**   ("Vendor"), as a condition to delivering the Equipment, has required (full or partial) payment of the purchase price of the Equipment prior to shipping the Equipment.  Borrower hereby directs the Lender to make the following payment to the Vendor:

**100.00**% of the invoiced cost of the Equipment, upon execution of this Authorization.

**0.00%** of the invoiced cost of Equipment, upon final verbal acceptance by Borrower, that the Equipment has been delivered and installed and is satisfactory to Borrower.

Titled Equipment for which payment has been made or is to be made in whole or part under this Authorization must be delivered to the Borrower and titled and/or registered within 21 days from the date Lender has funded any amount hereunder or such later date as the Lender and Borrower may agree on in writing.  Such certificate of title shall name the Borrower as owner and Lender as secured party.  If the Borrower fails to obtain the required certificate of title with the time period specified above, Borrower shall repay to the Lender, on demand, the full amount of any payments made by the Lender, pursuant to this Authorization, together with interest thereon at the per annum rate of 10% from the date or dates such payments were made to the Vendor by the Lender to the date of repayment in full to the Lender.

If any Equipment that is not Titled Equipment  for which payment has been made or is to be made in whole or part under this Authorization has not been delivered and accepted by Borrower on or before 60 days from the date Lender has funded any amount hereunder, or such later date as the Lender and Borrower may agree on in writing, Borrower shall repay to the Lender, on demand, the full amount of any payments made by the Lender, pursuant to this Authorization, together with interest thereon at the per annum rate of 10% from the date or dates such payments were made to the Vendor by the Lender to the date of repayment in full to the Lender.

Borrower acknowledges and agrees that (a) if the Borrower is not satisfied with the working condition of the Equipment covered or contemplated to be covered by the Agreement, Borrower shall only look to entities, such as the manufacturer, Vendor, installer, or carrier, and not to the Lender, with respect to the condition of the Equipment, (b) Borrower shall not assert against the Lender any claim or defense that Borrower may have with reference to the Equipment, its installation or delivery, (c) although certain items of Equipment may not have been delivered or installed by one or more Vendors once Lender provides full or partial payment to the Vendors, Borrower's obligation to make the Monthly Payments will commence pursuant to the terms and conditions of the Agreement, and (d) failure to pay any amount due hereunder when the same is due and the failure to perform any obligation hereunder is an Event of Default under the Agreement.

| **Accepted on:** | 5/30/2025 | **Accepted on:** | 5/30/2025 |
|---|---|---|---|
| **Borrower:** Terry Catlett Trucking, LLC | | **Lender:** Blue Bridge Financial, Inc. | |
| By: *[signature]* 6E0FF75C60524C6... | OWNER  *Title* | By: *Rob Snow* BEAF5775D37D47A... | President  *Title* |

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

| **INVOICE ACH (AUTOMATED CLEARING HOUSE) FORM** | | **AGREEMENT NO.** | |
|---|---|---|---|

| **Borrower:** | Terry Catlett Trucking, LLC | | |
|---|---|---|---|
| **Address:** | 6687 NW Sharp Rd | **Tax ID :** | 7550 |
| | King City, MO  64463-9218 | | |
| **Contact:** | Terry Catlett | **Email:** | |
| **Phone:** | | **Fax:** | |

| ☒ **Checking Account** | ☐ **Savings Account** |
|---|---|

Please Note: Any error with the Bank Name, Routing Number or Account Number will result in delays in funding.

Bank Name: _____

Routing Number: _____

Account Number: _____

*(Copy of a voided check from the above account is required, if different than account on file, provide 3 months statements on this account)*

Borrower acknowledges that a valid bank account to ACH from is required by Borrower as a condition to financing the transactions contemplated in the Agreement. By signing below, Borrower authorizes the Secured Party, to electronically deduct from Borrower's bank account referenced above immediately upon receipt of the signed EFA the amount detailed on the included invoice.

The terms and conditions of the Agreement are incorporated herein and made a part hereof. Capitalized terms not defined herein shall have the meaning given to them in the Agreement.

*Some of the correspondence in regards to your financing including but not limited to Monthly Statements and copies of your executed documents may be sent electronically to the email address above unless indicated differently below.*

| **Total Amount:** | **$0.00** |
|---|---|

| **Accepted on:** | 5/30/2025 | |
|---|---|---|
| **By:** | DocuSigned by: [signature] 6E0FF75C60524C6... | OWNER |
| | | *(Title)* |

FOR SECURED PARTY USE ONLY:

| Customer Code: |
|---|
| Start Date: |
| Payment Amount: |

COPY VIEW

Docusign Envelope ID: A2729B93B41538-43D4-B013-A8D74A6FBE7E

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

## ADDENDUM TO
## EQUIPMENT FINANCE AGREEMENT NO.

The Agreement referenced above (the "Agreement") is hereby supplemented and amended as provided herein. Except as expressly stated in this Addendum, the Agreement continues in full force and effect. Capitalized terms not otherwise defined herein or designated below have the meanings assigned in the Agreement. In addition to, and not in limitation of, your obligations under the Agreement, you agree as follows:

If the Equipment is delivered to you with, or at any time includes, a GPS location monitoring or similar device (a "Device"), you will not disable, damage or tamper in any way with such advice and will cooperate with us and with the vendor or other device installer on our request.

You hereby grant to us, and you direct the vendor or installer of any Device and the manufacturer or vendor of the Equipment to install the Device and give to us, full access to the Device and all information it may collect or contain at any time.

You consent to our viewing, copying, retaining and using any information on any Device. You waive any claim you may have against us or any person described above for any use of such access or information.

You further acknowledge and agree that we may employ the Device and any other means to disable or prevent your use or operation of the Equipment if you default under or breach the terms of the Agreement.

This Addendum is dated as of the date of the Agreement. All of your representations, warranties and agreements in the Agreement are incorporated by reference and you further represent that you are not in default under the Agreement.

**Upon receipt of the GPS Unit, the borrower will have 5 business days to install and active the device.**

**Address where you would like the GPS Sent:** KING CITY

Terry Catlett Trucking, LLC

By _____
6E0FF75C60524C6...

**Name:** Terry Lee Catlett

**Title:** OWNER

**Date:** 5/30/2025

Blue Bridge Financial, Inc.

By: Rob Snow _____
BEAF5775D37D47A...

**Name:** Rob Snow

**Title:** President

**Date:** 5/30/2025

*If an individual or sole proprietor, signature is intended to bind such person in his or her individual capacity.

{01077870-1/4001269/000001}

COPY VIEW

Docusign Envelope ID: A279B93B-4F38-43D4-B013-A8D74A6FDF7E

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net



# VERIFICATION OF ACCEPTANCE

## BORROWER INFORMATION

Company Name: **Terry Catlett Trucking, LLC**

Address: **6687 NW Sharp Rd King City MO 64463-9218**

Business Phone: _____

Business Tax ID (9 digits): _____7550_____

Contact Name:

Address:

Mobile Phone: _____

Email: _____

I confirm that the information above is true and accurate.     Initial Here: _____ 𝓣𝓤 _____

## PAYMENT TERMS  *All payments will be automatically withdrawn via ACH. Returned payments will incur additional fees.*

Term: **60 months**

Monthly Payment Amount: **$1,970.29**     Payment due on the **10th** of each month

**This is a non-cancellable contract. You are responsible for making 60 monthly payments of $1,970.29.**

Initial Here: _____ 𝓣𝓤 _____

## PAYMENT SCHEDULE  *Interim is a prorated payment collected to cover the period between the funding date and date of your first payment.*

Closing Costs: **$0.00**     Total Due at Signing: **$0.00**

**Upon completion of this document, $0.00 will be automatically withdrawn from the business bank account indicated in your Agreement.**

*Interim Amount: **$712.54**     Interim Due: **06/10/2025**

First Term Payment: **$1,970.29**     First Term Payment Due: **06/10/2025**

Total Payment Due: **$2,682.83**

**Please note that on 06/10/2025, the total amount of $2,682.83 will be automatically withdrawn from the business bank account indicated in your Agreement.**

I agree to the payment schedule above and confirm my account is ready for withdrawal.  Initial Here: _____ 𝓣𝓤 _____

## INSURANCE REQUIREMENT

You are required to provide a certificate of insurance within 3 days of funding. If not received, an Equipment Protection Policy will be applied to your account at a non-refundable monthly cost. You may provide your own insurance at any time by contacting us at customerservice@bluebridgefinancial.com.

I acknowledge and understand the Insurance Requirement described above.     Initial Here: _____ 𝓣𝓤 _____

*Agreement # 167673*

COPY VIEW

Docusign Envelope ID: A2F9B93B-4F38-43D4-B013-A8D74A6FBE7E

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

**BLUEBRIDGE** FINANCIAL

## EQUIPMENT INFORMATION

Total Equipment Cost: **$89,588.88**

Seller/Dealer Name: ___Terry catlett_____

Equipment Description: **2010 Freightliner Cascadia 125**
   **2003 Peterbilt 379**

Has the equipment been delivered? ☒ **YES**   ☐ **NO**     If **YES**, when? ___05302025_____

If **NO**, what date do you expect to take possession? ___No_____

Equipment Storage Location *(if different than business address)*: ___Same_____

**I confirm that the information above is true and accurate.**     Initial Here: ___[DS] [initials]___

## CONSENT AND DISCLAIMERS

Blue Bridge Financial, Inc. requests your consent to send text (SMS) messages to the mobile number on record. By consenting, you acknowledge that you understand and agree to participate in our text (SMS) messaging service.

Blue Bridge Financial may send all account statements, notices, disclosures, and other communications related to this Agreement electronically ("eStatements") via email. You consent to receive eStatements in lieu of paper statements and will notify Blue Bridge Financial promptly of any changes to your email or contact information.

You may withdraw your consent to eStatements anytime by emailing CustomerService@BlueBridgeFinancial.com and requesting paper statements.

**Name:** ___Terry Lee Catlett_____     **Title:** ___OWNER_____

**Signature:** ___[DocuSigned by: signature] 6E0FF75C60524C6...___     **Date:** ___5/30/2025_____

COPY VIEW

*Agreement # 167673*

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
CSC    1-800-858-5294

B. E-MAIL CONTACT AT SUBMITTER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

3137 55678
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Missouri (S.O.S.)

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | Terry Catlett Trucking, LLC | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX | |

| 1c. MAILING ADDRESS 6687 NW Sharp Rd | CITY King City | STATE MO | POSTAL CODE 64463 | COUNTRY USA |
|---|---|---|---|---|

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | Blue Bridge Financial, Inc. | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX | |

| 3c. MAILING ADDRESS 11921 Freedom Dr., Suite 1130 | CITY Reston | STATE VA | POSTAL CODE 20190 | COUNTRY USA |
|---|---|---|---|---|

4. COLLATERAL: This financing statement covers the following collateral:
2010 Freightliner Cascadia 125 VIN:1FUJGLDRXASAR0463
2003 Peterbilt 379 VIN:1XP5D49X13D595017

5. Check only if applicable and check only one box:    Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
3137 55678

**FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 07/01/23)**